IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 10-cv-00838-MSK

MICHAEL T. HENDERSON,

       Petitioner,

v.

B. DAVIS, Warden,

       Respondent.

---

**OPINION AND ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS***

---

**THIS MATTER** comes before the Court pursuant to Mr. Henderson's Petition for Writ of *Habeas Corpus* **(# 2)** pursuant to 28 U.S.C. § 2241, and the Respondent's response **(# 15)**.

Mr. Henderson is an inmate of the Federal Bureau of Prisons ("BOP"). He is approaching the end of a 125-month sentence, which will terminate on or about May 11, 2011. . Typically, as an inmate nears the end of his sentence, the BOP arranges for a transfer of the inmate to a "Residential Reentry Center," or "halfway house," in which the inmate begins to adapt to civilian life in a less-restrictive environment.

In 2007, Congress passed the "Second Chance Act," 18 U.S.C. § 3624(c), which provides that the BOP "shall, to the extent practicable, ensure that a prisoner . . . spends a portion of the final months of [a sentence] (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Prior to that enactment, the statute provided that assignment to a halfway house

under this provision would "not [ ] exceed 6 months." In other words, the Second Chance Act granted the BOP discretion to place soon-to-be-released inmates into halfway houses (and out of prisons) for longer periods of time.

In order to effectuate this additional discretion, the BOP promulgated a police by which "Bureau staff must approach every individual inmate's assessment with the understanding that he/she is now eligible for a maximum of 12 months pre-release [halfway house] placement." At the same time, it noted that "Bureau experience reflects [that] inmates' pre-release [halfway house] needs can usually be accommodated by a placement of six months or less," and that any determination by prison staff that an inmate warranted more than six months' halfway house placement must be approved by the BOP Regional Director.

In October 2009, after having evaluated the various factors that bear on the question, BOP staff recommended that Mr. Henderson be placed in a halfway house for the final six months of his sentence. Mr. Henderson disagrees with that conclusion, contending that he requires a full 12 months' halfway house placement in order to best ensure his re-entry into society. He contends that, in recommending 6 months' placement instead of 12, the BOP ignored the requirements of the Second Chance Act and instead based its decision on "a memorandum from the General Counsel of the BOP" – the same policy document quoted above.[1] Mr. Henderson contends that the requirement that BOP staff recommending halfway house

---

[1] Mr. Henderson does not challenge any of the BOP's findings with regard to the particular facts of his background or history, or contend that the BOP improperly weighed or balanced those factors. His only contention here seems to be a legal one: that the BOP indulges a presumption that six months' halfway house placement is sufficient for most inmates, while the Second Chance Act requires the BOP to presume that 12 months' placement is usually necessary.

2

placement of more than 6 months first obtain approval from the Regional Director reflects a BOP intention "that no inmate is to be given more than six months' halfway house [placement], except in a few undefined 'very unusual cases.'" Mr. Henderson contends that the Second Chance Act actually requires that "every inmate is entitled to and should receive 12 months' halfway house [placement], unless it can be shown fairly and objectively . . . that the duration should be for less."

The Court interprets Mr. Henderson's contention in this case to invoke the protection of the Due Process clause of the 5th Amendment. The Procedural Due Process clause ensures that the government will not deprive a party of liberty or property without engaging in fair procedures to reach a decision; the Substantive Due Process clause ensures that the decision reached is not arbitrary or capricious. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000). Here, Mr. Henderson contends that, in the process of making a determination as to his entitlement to halfway house placement, the BOP indulged an unwarranted (or perhaps even impermissible) presumption that 6 months' placement, rather than 12, was sufficient, and thus conducted the decisionmaking process under this improper constraint.[2]

Mr. Henderson is not the first inmate to raise this precise contention. In *Bernard v. Roal*, ___ F.Supp.2d ___, 2010 WL 2308198 (S.D.N.Y. June 10, 2010), the court construed an inmate's § 2241 petition to raise, among other things, an argument challenging "the alleged BOP police requiring 'extraordinary' circumstances for placements in [halfway houses] beyond six

---

[2]This Court is reluctant to conclusively state that this presents a substantive or procedural claim, and concludes that, ultimately, it is not necessary to strictly resolve this question.

3

months." *Id.* at *2. Concluding that Mr. Bernard's argument was that the BOP's policies "create a presumption that six months is the appropriate period for [halfway house] placement," the court rejected that argument, finding that such a policy "is not inconsistent with the statute [18 U.S.C. § 3624(c)(1)]." *Id.* at *5. Citing a lengthy string of cases that rejected similar arguments, the court in *Bernard* explained that the policy memorandum invoked by both Mr. Bernard there and Mr. Henderson here "merely sets forth the BOP's experience with pre-release placement." *Id.*, *citing Ebeck v. Anderson*, 2010 WL 234726 (W.D. Mo. Jan. 13, 2010). "Thus," it concluded, "courts have regularly rejected claims that the BOP could not properly create a presumption that six-month placement is sufficient." *Id.*, *citing McDonald v. Obama*, 2010 WL 1526442 (M.D. Pa. Mar. 15, 2010). This Court need not tread that same ground; it is sufficient to state that the Court finds the analysis in *Bernard* to be thorough and persuasive, and adopts it in its entirety.

The Court supplements *Bernard*'s analysis in one small respect. Congress has reposed considerable discretion in the BOP regarding placement of inmates. 18 U.S.C. § 3624(b) ("The Bureau may designate [an inmate] any available penal or correctional facility . . . that the Bureau determines to be appropriate and suitable"). In promulgating the Second Chance Act, Congress expressly made clear that it was not intending "to limit or restrict the authority" of the BOP in this regard. 18 U.S.C. § 3624(c)(4). Thus, an argument that the Court should read the Second Chance Act to reflect a Congressionally-enacted presumption that 12 months' halfway house placement is required for most inmates would do injustice to Congress' clearly-expressed intention not to usurp the BOP's discretion.

Prior to the Second Chance Act, courts repeatedly turned back arguments by inmates that

the prior language of 18 U.S.C. § 3264(c) <u>entitled</u> them to a particular amount (*i.e.* 6 months) of halfway house placement. *See Zamarripa v. Peterson*, 105 Fed.Appx. 253, 254 (10th Cir. 2004) (unpublished) ("[n]othing in § 3624(c) indicates any intention to encroach upon the [BOP's] authority to decide where the prisoner may be confined during the pre-release period"), *quoting Prows v. Federal Bureau of Prisons*, 981 F.2d 466, 469 (10th Cir. 1992). If, in enacting the Second Chance Act, Congress intended to reverse that line of reasoning and constrain the BOP's discretion in this regard, it could have done so expressly. However, besides changing the phrase "six months" to "twelve months," the Second Chance Act makes only cosmetic changes to the existing statutory language.[3] Congress' refusal to make additional substantive changes to the statutory language as part of the Second Chance Act strongly suggests that it did not intend to fundamentally alter the way in which that statute had been previously construed by the courts. To read the statute as Mr. Henderson suggests would require the Court to attribute to Congress an intention far beyond that which is evident in the text.

Accordingly, this Court finds nothing in the Second Chance Act or the BOP's policy memoranda applying it, that justify Mr. Henderson's contention that 12 months of halfway house placement is presumptively necessary. The BOP's decision here – that Mr. Henderson requires

---

[3]Prior to the Second Chance Act, 18 U.S.C. § 3624(c)(1) read "The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community." Thus, in addition to changing "six" to "twelve," the Second Chance Act thus interposed "Director of the Bureau of Prisons" for "Bureau of Prisons"; replaced with word "ensure" with "assure"; and substituted "a portion of the final months of that term" for "a reasonable part . . . of the last 10 per centum of the term."

only six months' placement – is within the scope of its authority and does not reflect a deprivation of Mr. Henderson's Procedural or Substantive Due Process rights.  Thus, Mr. Henderson's Petition **(# 2)** is **DENIED**.[4]  The Clerk of the Court shall enter Judgment and close this case.

Dated this 8th day of November, 2010

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge

---

[4] It is not clear to the Court whether 28 U.S.C. § 2253 requires the issuance of a Certificate of Appealability before Mr. Henderson may seek review of this ruling.  To the extent such a Certificate is necessary, the Court has considered the standards of *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), and finds that Mr. Henderson has not made a substantial showing of the denial of a constitutional right such that reasonable jurists could disagree as to the disposition of his petition.  Accordingly, the Court also denies a Certificate of Appealability.